United States District Court
Southern District of Texas
**ENTERED**
April 19, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DWAYNE RIVENS-BAKER, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00334 |
| | § | |
| BRYAN COLLIER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

Plaintiff Dwayne Rivens-Baker, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A. Pending before the Court also is Plaintiff's Motion for Preliminary Injunction. (D.E. 6).

For the reasons set forth below and for purposes of screening, the undersigned respectfully recommends that the Court **RETAIN** the following claims:

- Plaintiff's Eighth Amendment excessive force claims against **Andrew Salinas, Officer Cruz, and P. Anciso** in their individual capacities for monetary damages;

- Plaintiff's Eighth Amendment deliberate indifference claims against **Andrew Salinas and P. Samaniego** in their individual capacities for monetary damages;

- Plaintiff's Eighth Amendment excessive force claims against **P. Samaniego and Bryan Collier** in their supervisory and individual capacities for allegedly putting into place allegedly unconstitutional use-of-force policies; and

- Plaintiff's Eighth Amendment claim against **Bryan Collier** in his official capacity for injunctive relief related to TDCJ policies allegedly encouraging excessive and unnecessary use of force.

The undersigned will order service on these defendants.

The undersigned respectfully recommends further that:

- Plaintiff's Eighth Amendment claim against **P. Samaniego** in his official capacity for injunctive relief, related to TDCJ policies allegedly encouraging excessive and unnecessary use of force, be **DISMISSED without prejudice** for lack of standing;

- Plaintiff's remaining § 1983 claims against **Defendants** in their respective individual and official capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief; and

- Plaintiff's Motion for Preliminary Injunction (D.E. 6) be **DENIED**.

## I.    JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed in the Hughes Unit in Gatesville, Texas. Plaintiff's claims and allegations in this action arise in connection with his former assignment to the McConnell Unit in Beeville, Texas.

Plaintiff sues the following TDCJ and McConnell Unit officials: (1) TDCJ Executive Director Bryan Collier; (2) McConnell Unit Assistant Warden P. Samaniego; (3) Sgt. Andrew Salinas; (4) Officer Cruz; and (5) Sgt. P. Anciso. (D.E. 1, p. 3). Plaintiff sues all five defendants in their individual capacities and Collier and Samaniego in their official capacities. (D.E. 1-1, p. 1). Plaintiff alleges the following facts in his original complaint:

- On May 11, 2022, Anciso used chemical agents while Plaintiff was confined in a cage at the McConnell Unit. (D.E. 1-1, p. 3).

- Anciso lied to justify her use of chemical agents, stating that Plaintiff was attempting to cut himself with a razor. *Id.*

- At the time the chemical agents were used, Plaintiff was forced to remain in the cage along with urine and feces, and he was not allowed to use the restroom. *Id.* at 4.

- Before the May 11, 2022 incident, Cruz assaulted Plaintiff, using unnecessary force by kicking the slot onto his hand. *Id.*

- Plaintiff received no medical assistance after the use of force by Cruz. *Id.*

- On April 29, 2022, while confined in a small cage, Salinas gassed another inmate who was there, causing Plaintiff to suffer extreme breathing issues. *Id.* at 5.

- Salinas denied Plaintiff medical attention following this incident. *Id.*

- On another occasion, Plaintiff was forced to stay in a small cage more than 24 hours without the right to use a restroom or access to any water. *Id.*

Plaintiff seeks monetary relief only against each defendant in his or her individual capacity and injunctive relief only against Samaniego and Collier in their official capacities. *Id.* at 1.

As directed by the Court, Plaintiff filed a More Definite Statement in which he explains his claims in more detail. (D.E. 10). Plaintiff alleges the following pertinent facts in his More Definite Statement. Plaintiff states that he was housed at the McConnell Unit from December 2021 through March 2023. (*Id.* at 1). He subsequently arrived at the Hughes Unit in August 2023. (*Id.*).

With regard to the April 29, 2022 incident, Plaintiff states that he was placed in a small cage on Constant Direct Observation ("CDO"). (*Id.* at 1). Plaintiff describes the cage as six by six-foot with a stool inside. (*Id.*). Salinas gassed another prisoner, who was contained in a cell approximately twelve feet from Plaintiff, during an argument with that prisoner. (*Id.*). Before the nearby inmate was gassed, Plaintiff asked Salinas to be moved from the area but was denied. (*Id.*). Salinas then proceeded to taunt all prisoners caged in the room. (*Id.*) Plaintiff believes Salinas intended Plaintiff to suffer from the gas fumes. (*Id.*).

After Salinas gassed the other inmate, Plaintiff threw up and his lungs began to burn. (*Id.*). The gas migrated to Plaintiff's skin, face, and arms due to the way Salinas dispersed the gas. (*Id.*). Salinas denied Plaintiff's request for medical attention by laughing at Plaintiff and then ignoring him. (*Id.*). Following the incident, Plaintiff was kept in the cell all day and night. (*Id.*). Plaintiff does not recall whether he was given a bathroom break

bur remembers having to urinate on the floor because staff refused to take him to the bathroom.  (*Id.*).  According to Plaintiff, the cages smelled like urine and feces.  (*Id.*). Plaintiff suffered breathing issues while in the cage.  (*Id.*).  His breathing issues have since worsened since the April 29, 2022 incident, resulting in him using an inhaler and having breathing treatments.  (*Id.*).

Plaintiff claims that Salinas violated his Eighth Amendment rights by subjecting him to a chemical agent after specifically requesting to be moved.  (*Id.*).  Plaintiff further claims that Salinas acted with deliberate indifference to his medical needs by refusing him medical attention after requesting it.  (*Id.*).

Plaintiff next alleges that he was assaulted by Cruz on January 20, 2022.  (*Id.* at 2). On that day, Plaintiff attempted to get his breakfast and necessities that morning.  (*Id.*). Cruz intentionally kicked the tray slot with her foot while Plaintiff was talking to another officer.  (*Id.*).  Cruz's actions injured Plaintiff's hand.  (*Id.*).  At the time Cruz kicked the slot, Plaintiff was not disobeying any orders.  (*Id.*).

Cruz denied Plaintiff's request for medical attention and instead cursed Plaintiff. (*Id.*).  Plaintiff alleges that his hand was bruised and his wrist injured.  (*Id.*).  According to Plaintiff, a doctor scheduled Plaintiff to attend therapy for his wrist, but Plaintiff was never able to attend therapy.  (*Id.*).  Plaintiff states that his hand bothers him to this day.  (*Id.*). Plaintiff claims that Cruz violated his Eighth Amendment rights by maliciously causing him pain in kicking the tray slot.  (*Id.*).[1]

---

[1] In contrast to his claims raised against Salinas (D.E. 10, p. 1), Plaintiff does not claim that Cruz violated his Eighth Amendment rights by deliberately refusing him medical attention following the alleged use of force.  (D.E. 10, p. 2).

With regard to the May 11, 2022 incident, Plaintiff states that he was placed in the six by six-foot cage due to a prior use of force.  (*Id.*).  Anciso allegedly deployed a chemical agent on Plaintiff, falsely claiming that Plaintiff was trying to cut himself while Plaintiff had his hands in the air and turning his head away in the event she deployed the gas.  (*Id.*).  According to Plaintiff, Anciso ordered Plaintiff to put the razor down even though he was not carrying a razor.  (*Id.*).  Plaintiff states that he was not resisting any orders from Anciso because he had no razor in his possession.  (*Id.*).

As a result of the deployment of the gas, Plaintiff suffered bad chest pains, breathing issues, and peeling skin.  (*Id.*).  Plaintiff did not ask Anciso to be taken to medical as she had left the scene after gassing Plaintiff.  (*Id.*).  Plaintiff was taken to another cage in the chapel area later that night.  (*Id.*).  Plaintiff could not recall whether he was given food while in the cage, how many times he was allowed to eat, or whether he received a bathroom break during his stay in the cage that day and night.  (*Id.*).  Plaintiff alleges he suffers from breathing issues to this day.  (*Id.*).  Plaintiff claims that Anciso violated his Eighth Amendment rights by maliciously and intentionally using a chemical agent against him while knowing he did not have razor in his hand to cut himself.  (*Id.*).

Plaintiff states that he has been placed on CDO several times during his stay at the McConnell Unit, where he was forced to be in the small cages for twenty-four hours or more at a time.  (*Id.* at 3).  Samaniego placed Plaintiff in the cages at his discretion for CDO or security observation.  (*Id.*).  Plaintiff communicated with Samaniego on multiple occasions about being released from the cage and moved to an adequate cell with a working

toilet and room to stretch.  (*Id.*).  Plaintiff's requests were denied each time by Samaniego.  (*Id.*).  When Plaintiff was confined in the small cage, his feet would become swollen and he would suffer extreme cramps over his whole body.  (*Id.*).  Liberally construed, Plaintiff claims that Samaniego violated his Eighth Amendment rights by: (1) placing Plaintiff in the small cages over 24 hours at a time without adequate body space, restroom availability, or proper sanitary conditions; and (2) failing to train his staff to comply with TDCJ policies which resulted in the promotion of staff using excessive or unnecessary force on Plaintiff and other prisoners.  (*Id.*).

Plaintiff further wrote Collier on several occasions to inform him about the assaults he has suffered, the inhumane conditions in the small cages, and the excessive use of force by McConnell Unit officials.  (*Id.*).  While acknowledging Collier did not personally participate in any of the incidents described above, Plaintiff alleges that Collier was aware of policies encouraging prison officials to use force against inmates and that he did nothing to prevent the widespread use of violence against prisoners.  (*Id.*).  In fact, Plaintiff alleges that Collier effectively encouraged such violence against himself and other inmates through his inaction.  (D.E. 1-1, p. 4).

Plaintiff believes Collier is directly responsible for making policy changes regarding the actions taken by prison officials to use chemical agents in an excessive and unnecessary manner.  (D.E. 10, p. 3).  Plaintiff claims that Collier has violated his Eighth Amendment rights by: (1) not addressing, remedying, or changing existing policies that are inconsistent with the amount of excessive force used in TDCJ prison facilities; and (2) failing to train

officials in implementing use of force procedures consistently and safely.   (D.E. 1-1, p. 6; D.E. 10, p. 4).

## III.   GOVERNING LAW

### A.  Legal Standard for Screening of Plaintiff's Action

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but

whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

### B.  Relevant law regarding 42 U.S.C. § 1983

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).  "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).

## IV.   DISCUSSION

### A. Excessive Force

#### *(1)   General Legal Principles*

Convicted inmates have a constitutional right under the Eighth Amendment to be free from the use of excessive force. *See Whitley v. Albers*, 475 U.S. 312, 319-21 (1086); *Anthony v. Martinez,* 185 F. App'x 360, 363 (5th Cir. 2006). However, not "every malevolent touch by a prison guard" rises to the level of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1993).

In considering excessive force claims, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7. The Supreme Court in *Hudson* has articulated the following relevant factors to consider when evaluating whether a use of force was excessive: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *See id.* at 7. *See also Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (reciting the "well-known *Hudson* factors").

While the "core judicial inquiry" in an Eighth Amendment excessive force allegation is the nature of the force used, "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)*

(quoting *Hudson, 503 U.S. at 7*).  A "significant injury" is not a threshold requirement for establishing an excessive-force claim.  *Wilkins*, 559 U.S. 37–8 (2010); *Hudson, 503 U.S. at 7*.  However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id. at 37-38* (quoting *Hudson, 503 U.S. at 9-10*).

"[T]he *Hudson* factors do not affect 'the rule that requires proof of injury, albeit significant or insignificant." *Scott v. TDCJ Director*, No. 6:21-CV-00172, 2022 WL 822130, at *5 (E.D. Tex. Feb. 2, 2022), *adopted*, 2022 WL 822019 (E.D. Tex. Mar. 17, 2022) (citing *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)).  While the Fifth Circuit no longer requires significant injury for excessive force claims, the injury must still be more than *de minimis to show that the prison official used excessive force.  See Westfall v. Luna, 903 F.3d 534, 549-50 (5th Cir. 2018)* (recognizing that abrasions, bruises, bloody urine, and high blood pressure and heart rate are *de minimis injuries insufficient to support an excessive force claim*); *Brooks v. City of W. Point, Miss.*, 639 F. App'x 986, 990 (5th Cir. 2016) (finding that abrasions to hands and knees, some neck and back pain, and unspecified problems with asthma are *de minimis injuries*).

### (2)    Analysis

### April 29, 2022 Incident

Plaintiff alleges that on April 29, 2022, while placed in a small cage for CDO, Salinas gassed another prisoner who was only twelve feet from Plaintiff.  (D.E. 10, p. 1).

According to Plaintiff, Salinas denied Plaintiff's request to be moved before Salinas gassed the other inmate. (*Id.*). Plaintiff further alleges that Salinas taunted Plaintiff and other inmates contained in cages in the room. (*Id.*). Lastly, Plaintiff alleges that the gas deployment caused his lungs to burn, that the gas migrated to Plaintiff's skin, face, and arms due to the way Salinas dispersed the gas, and that his breathing issues caused by the gas deployment have worsened to this day. (*Id.*).

Plaintiff's allegations, taken as true, suggest that Salinas's use of force was not a good-faith effort to maintain or restore discipline with respect to Plaintiff and the other inmates placed nearby in cages but was instead applied maliciously and sadistically. The issue at the screening stage is not whether Plaintiff will prevail but whether he has alleged sufficient facts to state a claim. For purposes of screening, the undersigned finds Plaintiff has stated a viable excessive force claim against Salinas in his individual capacity for monetary damages. The undersigned recommends this claim be retained.

### January 20, 2022 Incident

Plaintiff alleges that he was assaulted by Cruz on January 20, 2022, even though he had not been disobeying any orders. (D.E. 10, p. 2). Plaintiff states that, while attempting to get his breakfast and necessities that morning, Cruz intentionally kicked the tray slot with her foot while Plaintiff was talking to another officer. (*Id.*). According to Plaintiff, Cruz's actions bruised Plaintiff's hand and caused his wrist to hurt. (*Id.*). Plaintiff further alleges that wrist therapy was scheduled for him and that his hand bothers him to this day. (*Id*).

Plaintiff's allegations, taken as true, suggest that Cruz's use of force was not a good-faith effort to maintain or restore discipline – especially considering Plaintiff was not disobeying any orders – but was instead applied maliciously and sadistically. For purposes of screening, the undersigned finds Plaintiff has stated a viable excessive force claim against Cruz  in her individual capacity for monetary damages.  The undersigned recommends this claim be retained.

### May 11, 2022 Incident

Plaintiff alleges that, on May 11, 2022, he was placed in a small cage due to a prior use of force. (D.E. 10, p. 2). Plaintiff further alleges that:

- Anciso deployed a chemical agent on Plaintiff, falsely claiming that Plaintiff was trying to cut himself while Plaintiff had his hands in the air and turning his head away in the event she deployed the gas;

- Anciso ordered Plaintiff to put the razor down even though he was not carrying a razor;

- he was not resisting any orders from Anciso because he had no razor in his possession; and

- as a result, Plaintiff suffered bad chest pains, lasting breathing issues, and peeling skin.

(*Id.*).

Plaintiff's allegations, taken as true, suggest that Anciso's use of force was not a good-faith effort to maintain or restore discipline – especially considering Plaintiff was not disobeying any orders as to having a razor in his possession – but was instead applied maliciously and sadistically.  For purposes of screening, the undersigned finds Plaintiff has

stated a viable excessive force claim against Anciso in his individual capacity for monetary damages.  The undersigned recommends this claim be retained.

### B.  Deliberate Indifference

#### (1)     General Legal Principles

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII.  The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII.  "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)).  An Eighth Amendment violation occurs when a prison official acts with deliberate indifference to an inmate's health and safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

"Deliberate indifference is an extremely high standard to meet."  *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).  The test for deliberate indifference has both an objective and subjective prong. *Id.* at 839.  Under the objective prong, the inmate must first prove "an objective exposure to a substantial risk of harm." *Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021).  To prove the subjective prong of the deliberate indifference test, the inmate must establish that the prison official "had subjective knowledge that the inmate faced a substantial risk of harm [to the inmate's

health and safety] and … [consciously] disregarded the risk." *Id.*; *see also Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002). In other words, a prison official acts with deliberate indifference if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. 825, 847 (1994).

Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Estelle*, 429 U.S at 104-05. In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). In addition to establishing the objective and subjective prongs, an inmate "must prove that the delay or denial of medical treatment resulted in substantial harm, such as additional pain." *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019) (cleaned up).

A prison official's knowledge of substantial risk may be inferred if the risk was obvious. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). The Fifth Circuit nevertheless has "consistently recognized . . . that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson*

*v. Upshur Cnty., Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001)); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough, the officials must have actual knowledge of the substantial risk").  The Supreme Court further explains that "an official's failure to alleviate a significant risk that he should have perceived but did not" falls short of constituting deliberate indifference. *Farmer*, 511 U.S. at 838.  Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of humankind.  *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

### (2)   Analysis

### Salinas

Plaintiff alleges that, after Salinas deployed a chemical agent near him on April 29, 2022, Plaintiff requested medical attention from him.  (D.E. 10, p. 1).  According to Plaintiff, Salinas denied Plaintiff medical attention, laughed at Plaintiff, and then ignored him.  (*Id.*).  Plaintiff further alleges that: (1) he was kept in the small cage, which smelled like urine and feces, all day and night; (2) he suffered breathing issues while in the cage; and (3) his breathing issues have since worsened since the April 29, 2022 incident, resulting in him using an inhaler and having breathing treatments.  (*Id.*).

Plaintiff's allegations, taken as true, indicate that Salinas was aware of a significant risk to Plaintiff's health after he deployed the chemical agent but that he took no reasonable measure to abate the risk and instead denied Plaintiff's request for immediate medical treatment.  Thus, they are sufficient to state a plausible deliberate indifference claim against

Salinas. *See Twombly*, 550 U.S. at 555; *Valentine*, 993 F.3d at 281. Accordingly, the undersigned recommends Plaintiff's deliberate indifference claim against Salinas in his individual capacity for monetary damages be retained.

### Samaniego

Plaintiff alleges that, during his stay at the McConnell Unit, he was placed in CDO several times where he was forced to be in a small cage for twenty-four hours or more at a time. (D.E. 10, p. 3). Plaintiff further alleges that:

- Samaniego was the decisionmaker who placed Plaintiff in the cages at his discretion for CDO or security observation;

- Plaintiff communicated with Samaniego on multiple occasions about being released from the cage and moved to an adequate cell with a working toilet and room to stretch;

- Plaintiff's requests were denied each time by Samaniego; and

- when Plaintiff was confined in the small cage, his feet would become swollen and he would suffer extreme cramps over his whole body.

(*Id.*).

With respect to Plaintiff's alleged placement on multiple occasions in small cages for CDO, his allegations indicate that Samaniego affirmatively participated in acts that potentially caused Plaintiff a constitutional injury. Indeed, Plaintiff's allegations indicate that: (1) his placement in a small cage for over 24 hours at a time presented a significant risk to his health as he was denied adequate body space, access to restrooms, and proper sanitary conditions; and (2) even though Samaniego was aware of these health risks, he took no reasonable measure to abate them. Thus, Plaintiff's allegations are sufficient to

17 / 30

state a plausible deliberate indifference claim against Samaniego. *See Twombly*, 550 U.S. at 555; *Valentine*, 993 F.3d at 281. Accordingly, the undersigned recommends Plaintiff's deliberate indifference claim against Samaniego in his individual capacity for monetary damages be retained.

### C. Supervisory Officials

#### *(1)* *General Legal Principles*

As noted above, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson*, 709 F.2d at 382. There is no vicarious or respondeat superior liability of supervisors under § 1983. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. A plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676.

Thus, a supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Supervisory liability without overt personal participation in the offensive act thus can lie only if the supervisory official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the

moving force behind the constitutional violation." *Thompkins*, 828 F.2d at 304 (internal quotations omitted). "A policy is normally an official statement, ordinance, or regulation, but in certain circumstances a persistent, widespread practice that is so commonplace as to constitute a custom can also be treated as policy." *McNeil v. Caruso*, No. 17-01688, 2019 WL 1435831, at *2 (M.D. La. Mar. 28, 2019) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

To the extent claims against supervisory officials are based on a failure to train or supervise, "the Fifth Circuit has held that a plaintiff must show that (1) the supervisor either failed to supervise or train the subordinate officials; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Brown v. Gonzales*, No. 2:23-CV-068-Z-BR, 2024 WL 780452, at *4 (N.D. Tex. Jan. 26, 2024), *adopted*, 2024 WL 779240 (N.D. Tex. Feb. 26, 2024) (citing *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008)); *see also Porter*, 659 F.3d at 446 (explaining that a plaintiff seeking to establish "supervisory liability for constitutional violations committed by subordinate employees … must show that the supervisor acted, or failed to act, with deliberate indifference, to violations of others' constitutional rights committed by their subordinates") (cleaned up) (emphasis in original). Deliberate indifference in this context, therefore, requires "a conscious choice to endanger constitutional rights" and the proof of deliberate indifference requires more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Mesa*, 543 F.3d at 274. A claim of failure to train or supervise "presupposes an

underlying constitutional violation." *Brown*, 2024 WL 780452, at *5 (citing *Perryman v. Bloomfield*, 69 F. App'x 659 (5th Cir. 2003)).

### *(2)   Analysis*

### Policies Encouraging the Use of Excessive Force

Liberally construed, Plaintiff's allegations indicate that Samaniego put into place policies at the McConnell Unit whereby he would ignore subordinate officials' use of excessive force and would effectively promote and encourage staff to use such unnecessary and excessive force against inmates to punish and intimidate them.  (D.E. 1-1, p. 4; D.E. 10, pp. 3-4).  Plaintiff's allegations further reflect that such policies were ratified by Collier who, in turn, encouraged prison staff to use excessive and unnecessary force on inmates in TDCJ custody as a way to intimidate them.  (*Id.*).  According to Plaintiff, both Collier and Samaniego were aware that the prison-wide use of chemical agents can be used in a torturous manner on animals.  (D.E. 1-1).

Plaintiff's allegations, taken as true, suggest that both Samaniego and Collier put into place unconstitutional policies regarding the use of chemical agents on inmates and that such policies were the moving force behind the Eighth Amendment excessive force violations committed against him.   Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment excessive force claims be retained against Samaniego and Collier in their supervisory  and individual capacities for allegedly putting into place these unconstitutional use-of-force policies.

### Failure to Train

Plaintiff claims that Samaniego in his individual and supervisory capacity failed to train his staff to comply with TDCJ's stated policies, which resulted in the promotion of staff using excessive or unnecessary force on Plaintiff and other prisoners. (D.E. 10 p. 3). Plaintiff further claims that Collier, as TDCJ's executive director, failed to train officials in implementing use-of-force procedures consistently and safely. (D.E. 1-1, p. 6).

Plaintiff's allegations regarding Samaniego's and Collier's failure to train subordinate officials are wholly conclusory and threadbare. *See Iqbal*, 556 U.S. at 678. Other than generally stating that these defendants failed to train their staff in the safe implementation of proper use-of-force procedures, Plaintiff fails to allege any particular deficiencies regarding Samaniego's or Collier's training of their subordinate staff. *See Wesley v. Neal*, No. 5:22cv78, 2024 WL 1506839, at *7 (E.D. Tex. Feb. 2, 2024) (explaining that "[i]n order for liability to attach based on an inadequate training claim, the plaintiff must allege with specificity how a particular training program is defective"), *adopted*, 2024 WL 911720 (E.D. Tex. Mar. 4, 2024) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). He further does not provide specific facts as to how their alleged failure to train caused the violation of Plaintiff's Eighth Amendment excessive force claims. Thus, Plaintiff's allegations that Samaniego's and Collier's failure to train were deliberately indifferent to the violation of Plaintiff's constitutional rights are wholly conclusory. *See Wesley*, 2024 WL 1506839, at *7 ("Conclusory allegations of failure to train are not sufficient to set out a claim under … § 1983").

Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claims against Samaniego and Collier in their individual, supervisory capacities for monetary relief for failure to train subordinate officials be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### D.  Official Capacity Claims for Injunctive Relief

Plaintiff seeks injunctive relief with respect to his claims against Samaniego and Collier in their official capacities.  Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies.  U.S. Const., Art. III, § 2.  This article requires parties seeking to invoke federal court jurisdiction to demonstrate they have a legally cognizable interest or personal stake in the outcome of a case.  *Genesis Healthcare v. Symczyk*, 569 U.S. 66, 71 (2013); *Payne v. Progressive Financial Services, Inc.*, 748 F.3d 605, 607 (5th Cir. 2014).  A live controversy must exist at every stage of the litigation.  *Genesis*, 569 U.S. at 71.

A claim becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).  In other words, if a controversy between parties resolves to the point that they no longer qualify as "'adverse parties with sufficient legal interests to maintain the litigation,'" a court is without power to entertain the particular claim.  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009) (quoting *United States v. Lares-Meraz*, 452 F.3d 352, 351 (5th Cir. 2006) (per curiam)).  Courts, therefore, lack

"constitutional jurisdiction" to resolve an issue where there is no Article III controversy. *See Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999).

Generally, where an inmate challenges conditions of confinement at a particular prison facility, the transfer of the inmate out of that facility generally renders moot any claims for injunctive or declaratory relief moot against defendants at that unit. *See Hermann v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (holding that plaintiff's transfer to a different prison facility rendered his claims for declaratory and injunctive relief moot); *Cooper v. Sheriff, Lubbock, Cnty.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (holding that inmate's transfer from county jail to state prison rendered moot his claims for injunctive relief); *Sias v. Jacobs*, No. 6:17cv413, 2017 WL 8229544, at *4 (E.D. Tex. Dec. 11, 2017) (holding that a prisoner's transfer from a prison unit renders moot his claims of deliberate indifference to his health when seeking injunctive relief against the defendants at that unit).

Despite this general rule, an exception to the mootness doctrine lies in controversies that are "capable of repetition, yet evading review." *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018). The exception is available where "'(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration,' and (2) 'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (alterations in original) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

In certain circumstances where an inmate is transferred to another prison, an inmate may avoid dismissal on mootness grounds by identifying in his complaint a statewide or

prison-system policy that led to the constitutional violations which remain ongoing at the new prison unit. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002), 276 F.3d at 741. *See also Lehn v. Holmes*, 364 F.3d 862, 871-72 (7th Cir. 2004) (reversing district court's dismissal of inmate's complaint on mootness grounds, concluding that inmate was not seeking injunctive relief for a condition specific to a particular prison, but rather was seeking relief from a condition that stems from a system-wide policy). Such allegations of a system-wide policy relate to the principle as to whether an alleged constitutional violation is "capable of repetition yet evading review." *Oliver*, 276 F.3d at 741 (citation omitted).

Plaintiff is no longer housed at the McConnell Unit. At the time he filed this complaint, he was housed at the Hughes Unit in Gatesville, Texas. (D.E. 1 at 3). He currently is housed at that unit. Nevertheless, with respect to his claims, Plaintiff appears to identify a system-wide TDCJ policy which encourages prison staff to use excessive and unnecessary force on inmates through the use of chemical agents as a way to punish and intimidate them. Pursuant to such an alleged system-wide TDCJ policy, Plaintiff may again be subject to the same alleged acts that form the basis of his Eighth Amendment excessive force claims. *See Kingdomware Techs., Inc*, 579 U.S. at 170.

Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claims related to TDCJ policies encouraging excessive and unnecessary use of force on inmates be retained against Collier in his official capacity for injunctive relief. *See Lehn*, 364 F.3d at 871-72 (rejecting dismissal of inmate's § 1983 case on the basis of mootness as he named the state prison system's director and sought relief from a system-wide policy).

Plaintiff's constitutional claims seeking injunctive relief against Samaniego, however, should be dismissed for lack of Article III standing. Samaniego was employed at the McConnell Unit at all relevant times. In contrast to Collier, Samaniego lacks the authority to effectuate any prospective injunctive relief on behalf of Plaintiff, who is currently housed at a different prison. *See McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) ("[P]laintiff does not have standing to pursue injunctive relief because [defendant] is without authority to redress his injuries."); *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (explaining that plaintiffs "have no case or controversy" with defendants who have no power to redress the injuries alleged). Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment excessive force claim seeking injunctive relief against Samaniego in his official capacity be dismissed without prejudice.

### E. Motion for Preliminary Injunction

Plaintiff has filed a Motion for Preliminary Injunction due to him being subjected to irreparable harm. (D.E. 6). Plaintiff asks the Court to order TDCJ and Defendants to test him for cancer and tumors due to his exposure to chemical agents. (D.E. 6, p. 1). He further asks the Court to order a "No Gas Policy" due to his medical conditions and that such policy should remain in effect until a medical diagnosis is completed regarding the short-term and long-term effects of exposure to chemical agents. (*Id.*).

A federal court may grant a preliminary injunction "to preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits." *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th

Cir. 2017) (restating and agreeing with the district court's framework in determining whether to grant a preliminary injunction).  A court should grant a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) if the movant establishes the following: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Robinson v. Hunt Cnty., Texas*, 921 F.3d 440, 451 (5th Cir. 2019) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006)).

The Fifth Circuit has cautioned that granting a preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)); *see also Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("The decision to grant a preliminary injunction is to be treated as the exception rather than the rule.").

In cases involving prisoners, courts are particularly reluctant to grant requests for a preliminary injunction, as "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Wagner v. Campuzano*, No. 1:12-CV-205-C, 2013 WL 12147778, at *1 (N.D. Tex. May 31, 2013) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).  The Prison Litigation Reform Act (PLRA) even

instructs that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A).

To obtain preliminary injunctive relief, Plaintiff first must demonstrate a substantial likelihood of success on the merits of his lawsuit. *Robinson*, 921 F.3d at 451; *Sepulvado*, 729 F.3d at 417. The posture of this case is in the early stage, and the parties have not conducted any discovery in this case with respect to Plaintiff's claims. Plaintiff otherwise fails to argue or otherwise show a likelihood of success at this time with respect to the merits of any of his constitutional claims.

Additionally, Plaintiff has failed to demonstrate a substantial threat of an irreparable injury. Plaintiff's conclusory allegations of potential harm, such as his speculation he might have cancer as a result of the deployment of chemical agents on him, do not establish a substantial threat of an irreparable injury. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-22 (2008) (recognizing that irreparable harm must be likely and not merely speculative or possible). Moreover, Plaintiff's allegations of potential and/or speculative harm do not amount to a constitutional violation, and in the absence of such a violation, federal courts are reluctant to interfere in the internal affairs of a state prison. *See Richie v. UTMB Hosp. Galveston, No. 2:12-CV-322, 2012 WL 12871940, at *2 (S.D. Tex. Oct. 18, 2012)* (Ellington, M.J.) (citing *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988)).

Accordingly, the undersigned recommends that Plaintiff's Motion for Preliminary Injunction (D.E. 6) be denied.

## V.      RECOMMENDATION

For the reasons stated above and for purposes of § 1915A and §1915(e)(2), the undersigned respectfully recommends that the Court **RETAIN** the following claims:

- Plaintiff's Eighth Amendment excessive force claims against **Salinas, Cruz, and Anciso** in their individual capacities for monetary damages;

- Plaintiff's Eighth Amendment deliberate indifference claims against **Salinas and Samaniego** in their individual capacities for monetary damages;

- Plaintiff's Eighth Amendment excessive force claims against **Samaniego and Collier** in their supervisory and individual capacities for allegedly putting into place allegedly unconstitutional use-of-force policies; and

- Plaintiff's Eighth Amendment claim against **Collier** in his official capacity for injunctive relief related to TDCJ policies allegedly encouraging excessive and unnecessary use of force.

The undersigned will order service on these defendants by separate order.

The undersigned respectfully recommends further that:

- Plaintiff's Eighth Amendment claim against **Samaniego** in his official capacity for injunctive relief, related to TDCJ policies allegedly encouraging excessive and unnecessary use of force, be **DISMISSED without prejudice** for lack of standing;

- Plaintiff's remaining § 1983 claims against **Defendants** in their respective individual and official capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief; and

28 / 30

- Plaintiff's Motion for Preliminary Injunction (D.E. 6) be **DENIED**.

Respectfully submitted on April 19, 2024.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).